Janie H. Chang (SBN 235648)*
jchang@gbla.org
Lily Marshall-Bass (SBN 264806)
lmarshall-bass@gbla.org
Celida Miramontes (SBN 269783)
cmiramontes@gbla.org
GREATER BAKERSFIELD LEGAL ASSISTANCE, INC.
615 California Avenue
Bakersfield, CA 93304
Tel:     (661) 321-3994
Fax:     (661) 325-4482

Attorneys for PLAINTIFFS,
BRITTNEY MURPHY,
JANE DOE,
PATRICIA AZEVEDO,
ANDREA GONZALES and
MONICA DAVIS

(Counsel for Plaintiffs continued on next page)

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTNEY MURPHY, JANE DOE, PATRICIA AZEVEDO, ANDREA GONZALES and MONICA DAVIS, <br><br> Plaintiff, <br><br> vs. <br><br> HOUSING AUTHORITY OF THE COUNTY OF KERN and STEPHEN PELZ, in his official capacity as Executive Director of the Housing Authority of the County of Kern, and Does 1 through 10, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

Richard A. Rothschild (SBN 67356)
rrothschild@wclp.org
Stephanie E. Haffner (SBN 194192)
shaffner@wclp.org
Navneet K. Grewal (SBN 251930)
ngrewal@wclp.org
Madeline Howard (SBN 254660)*
mhoward@wclp.org
WESTERN CENTER ON LAW AND
POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA  90010
Tel:  (213) 487-7211
Fax: (213) 487-0242


Amy P. Lally (SBN 198555)
alally@sidley.com
Brent L. Nichols (SBN 245606)*
bnichols@sidley.com
Amanda V. Lopez (SBN 273602)
alopez@sidley.com
Wesley R. Montalvo (280570)
wmontalvo@sidley.com
William M. Rosenthal (SBN 287643)
wrosenthal@sidley.com
SIDLEY AUSTIN LLP
555 W. Fifth Street, Suite 4000
Los Angeles, CA 90013
Tel: (213) 896-6677
Fax: (213) 896-6600

* denotes designated counsel for service

(Counsel for Plaintiffs continued from first page)

## INTRODUCTION

1)      Plaintiffs BRITTNEY MURPHY, JANE DOE, PATRICIA AZEVEDO, ANDREA GONZALES and MONICA DAVIS have low incomes and face imminent homelessness because the Housing Authority of the County of Kern terminated each of their Section 8 housing vouchers without affording them due process of law.

2)      Plaintiffs bring this action for injunctive, declaratory, and mandamus relief against defendants, STEPHEN PELZ, Executive Director of the Housing Authority of the County of Kern in his official capacity, and the HOUSING AUTHORITY OF THE COUNTY OF KERN.

3)      The federal Section 8 Housing Choice Voucher Program provides critical rental assistance to people with extremely low incomes, like plaintiffs, so that they can secure decent and safe affordable housing.  Participants in the program receive a voucher for a subsidy that supplements what the individual or family can pay for rent in the private market.  Housing authorities may only terminate a voucher if a participant violates certain program rules.  Participants are protected by due process of law, and federal regulations establish detailed termination procedures.

4)      Plaintiffs are a former foster youth, a single mother of three minor children, two disabled grandmothers and a single mother of two, each of whom relied on Section 8 to help them afford safe and decent housing for their families until defendants terminated assistance without proper notice or fair hearing.

5)      Despite plaintiffs' compliance with program rules, defendants terminated Section 8 assistance and did not provide plaintiffs proper notice of the termination decision.  When each plaintiff sought to challenge defendants' erroneous termination decision through the federally-mandated informal hearing process, defendants upheld each termination decision without allowing plaintiffs to review or challenge evidence against them.  Defendants based termination decisions on hearsay evidence, erroneously placed the burden of proof on plaintiffs, and applied incorrect legal standards.  Defendants further failed to issue written termination decisions providing reasons for their decisions or provide plaintiffs' counsel with requested records.

6)      Without Section 8 vouchers, plaintiffs lack stable housing and are at imminent risk of losing their temporary shelter at any time.

## JURISDICTION AND VENUE

7)      This Court has jurisdiction pursuant to 28 U.S.C §§1331, 1343, 2201, and 2202.

8)      This Court has supplemental jurisdiction over California state law claims pursuant to 28 U.S.C. §1367 because plaintiffs' claims under California state law arise from the same actions and omissions which form the basis of plaintiffs' federal claims and thus the state claims are so related to the federal claims that they form part of the same case or controversy.

9)      Venue is appropriate in the Eastern District of California pursuant to 28 U.S.C. §1391(b) because defendants' acts and omissions occurred in the County of Kern which is located within the Eastern District, and defendants perform their official duties in the City of Bakersfield in the County of Kern and therefore reside therein.

## PARTIES

10)      Plaintiff BRITTNEY MURPHY is 21 years old and received Section 8 rental assistance when she aged out of the Kern County foster care system.  At all relevant times, she has been eligible for Section 8 rental assistance and resided in the City of Bakersfield in the County of Kern in the State of California.  After Ms. Murphy lost her job and defendants did not reduce her rent, she was forced to sell plasma to pay rent until she became too sick to do so.  Defendants then terminated her voucher.  While she currently lives with her sister, she is uncertain how long this living arrangement will last.

11)      Plaintiff JANE DOE is a 41-year-old single mother of three minor children.  At all relevant times, she has been eligible for Section 8 rental assistance and has resided in the City of Bakersfield in the County of Kern in the State of California.  Since HACK terminated her rental assistance, she has lived with relatives in exchange for contributing to the rent as she is able, and she and her children sleep in the living room.  She is uncertain how long this living arrangement will last.

12)      Plaintiff PATRICIA AZEVEDO is a 63-year-old woman with disabilities whose sole

income is $867 in Social Security and Supplemental Social Security benefits.  At all relevant times, Ms. Azevedo has resided in the City of Bakersfield in the County of Kern in the State of California and has been eligible for Section 8 rental assistance.  Since HACK terminated her rental assistance, Ms. Azevedo and her adult daughter pay $700, approximately 81% of their income, for rent.  They are at risk of eviction for being unable to pay their rent.

13)     Plaintiff ANDREA GONZALES is a 46-year-old mother of two children ages 19 and 16.  At all relevant times, Ms. Gonzales has resided in the City of Bakersfield in the County of Kern in the State of California and has been eligible for Section 8 rental assistance.  Ms. Gonzales relied on Section 8 assistance to provide safe housing for her children after she escaped her abusive boyfriend.  After HACK terminated her rental assistance, Ms. Gonzales and her children stayed temporarily at friends' homes.  Recently, Ms. Gonzales secured part-time employment and is now renting a one-bedroom apartment for herself and her two children for $525 per month.  Ms. Gonzales spends more than 40% of her gross income on rent and utilities.

14)     Plaintiff MONICA DAVIS is a 53-year-old disabled grandmother.  At all relevant times, Ms. Davis has resided in the City of Ridgecrest in the County of Kern in the State of California and has been eligible for Section 8 rental assistance.  Ms. Davis was homeless before she received Section 8 assistance.  Since Ms. Davis was displaced from her home due to hazardous conditions and HACK terminated her rental assistance, Ms. Davis has been temporarily staying with family or friends, and she occasionally sleeps in her car.

15)     Each plaintiff has been subject to voucher termination procedures that suffered from deficient notices, erroneous standards of proof, unlawful termination standards, and unlawful hearing procedures that violate federal mandates and due process of law.

16)     Defendant, HOUSING AUTHORITY OF THE COUNTY OF KERN ("the Authority"), is the public housing agency for the County of Kern.  The Authority administers the County's federal Section 8 rent subsidy program pursuant to 24 C.F.R. §982, *et seq.* and California Health and Safety Code §34200, *et seq.*

17)     The Authority is funded by the Department of Housing and Urban Development

(HUD), the mission of which is to "improve the quality of life of low-income residents by providing safe, affordable housing and assisting residents toward self-sufficiency and home ownership."  The Authority is charged with administering the Section 8 program to aid "low-income families in obtaining a decent place to live" and to promote "economically mixed housing."  42 U.S.C.A. §1437f.

18)    Defendant, STEPHEN PELZ, the Executive Director of the Authority, is charged with the administration and oversight of the Authority's rules and regulations.  He is sued in his official capacity.

19)    The true names and capacities, whether individual, associate, corporate, or otherwise of those defendants named in this action as defendants DOES 1 through 10, and each of them, are unknown to plaintiffs, who therefore sue said defendants by such fictitious names.  DOES 1 through 5, inclusive, are agencies or entities responsible for or engaged in the unlawful practices and policies alleged herein.  DOES 6 through 10, inclusive, are present or former employees of the Authority responsible for or engaged in the unlawful practices and policies alleged herein.  Plaintiffs will seek leave to amend this complaint to allege their true names and capacities when ascertained.

20)    The defendants, collectively, are referred to herein as HACK.

## LEGAL BACKGROUND: THE SECTION 8 VOUCHER PROGRAM

### Section 8 Housing Choice Voucher Program Overview

21)    Congress, to aid "low-income families in obtaining a decent place to live," established the Section 8 Housing Choice Voucher program which provides a "monthly assistance payment" to families.  42 U.S.C. §§1437f(a), 1437f(o)(2).

22)    HUD allocates Section 8 funds to local public housing agencies, and the local public housing agencies enter into housing assistance payment contracts with property owners wherein the agencies agree to subsidize participant families' rent.  42 U.S.C. §1437f(o)(2).  Rental properties must meet federal Housing Quality Standards pursuant to 42 U.S.C. §1437f(o)(8) and 24 C.F.R. §982.401.

23)    HUD sets reasonable rent levels by number of bedrooms for every county and

participants may only rent housing which meets reasonable rent standards.  42 U.S.C. §§1437f(c)(1); 1437f(o)(2).

24)     Voucher recipients are issued vouchers depending on their family size and income and are required to report changes in family composition and income to the local housing authority.  24 C.F.R. §982.515 *et seq.*; 24 C.F.R. §982.551(1).  Families must select a unit appropriate for their family size based on housing authority standards.  24 C.F.R. §982.402(a).  Families may request exceptions to unit size standards based on hardship, disability, or other circumstances.  24 C.F.R. §982.402(b)(8).

25)     In most circumstances, the participant's share of the rent may not exceed thirty percent of adjusted income.  42 U.S.C. §1437f(o)(2).  The housing authority pays the remaining portion of the rent directly to the private landlord.  42 U.S.C. §1437f(c)(3).  Housing authorities must adjust the participant's share of rent in accordance with participant income.  24 C.F.R. §982.516.

26)     Housing authorities may establish a minimum rent.  24 C.F.R. §5.630.  The Authority's minimum rent is $50.  Section 8 Administrative Plan, Chapter 9, Section 9E, ¶2.  The Authority must grant a hardship exemption from the minimum rent if the family will be evicted because they cannot pay the minimum rent.  24 C.F.R. §5.630(b).

27)     Housing authorities must grant participants an opportunity to contest certain decisions, including a family's rent amount and unit size, through an informal hearing.  24 C.F.R. §982.555.  Housing authorities must also grant a hearing to participants who are denied a request for an exception to the unit size standards.  24 C.F.R. §982.555(a)(iv).

### Termination of Voucher Assistance

28)     Participants in the Section 8 voucher program have a property interest in the voucher and are entitled to due process of law under the U.S. Constitution, 14th Amendment, before benefits may be terminated.  *Ressler v. Pierce*, 692 F.2d 1212 (9th Cir. 1982); *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008).  HUD regulations, 24 C.F.R. §§981.551 *et seq.*, further define required procedures.

29)     Assistance may be terminated for serious violations of a participant's lease.  24 C.F.R. §982.551(e).  However the Housing Authority must use its discretion to consider mitigating circumstances in determining whether termination is appropriate in a given case.  24 C.F.R. §982.552(c)(2); *Baldwin v. Hous. Auth. of City of Camden*, NJ, 278 F.Supp.2d 365, 371 (D.N.J. 2003).  A housing authority bears the burden of proof in establishing a basis for termination.

30)     HUD regulations, 24 C.F.R. §982.555 *et seq.*, define the minimum requirements for terminating Section 8 rental assistance.  Housing authorities must provide: 1) notice including reasons for the termination; 2) the opportunity to examine documents relevant to the hearing before the hearing; 3) the exclusion of any documents at the hearing which are not made available to the family in advance; 4) the opportunity to present evidence and question any witnesses at the hearing; and 5) a written statement of the reasons for the decision which is based on a preponderance of the evidence presented at the hearing.

31)     Housing Authorities may not lawfully terminate assistance for reasons other than those permitted by federal regulations.  24 C.F.R. §982.552.

32)     If a participant is terminated after the informal hearing, she must be given written notice of the right to appeal and the timeline for appeal.  Code of Civ. Proc. §1094.6.

## FACTS

### PLAINTIFF BRITTNEY MURPHY

33)     Plaintiff BRITTNEY MURPHY is a 21-year-old woman who grew up in Kern County's foster care system.

34)     At age 18, Ms. Murphy received Section 8 rental assistance to aid her transition to independent adulthood.  In September 2010 she entered into a one-year lease for an apartment.  The monthly rent was $525.  Because she had no income, the Authority set Ms. Murphy's portion of the rent at $0.

35)     The same day that Ms. Murphy received the keys for the apartment, she secured employment as a retail assistant.  Ms. Murphy promptly notified the Authority of her change in income.  On September 23, 2010, the Authority adjusted her rent share to $30 per month and applied

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

the change retroactively to September 10, 2010.  The Authority did not inform Ms. Murphy that it had adjusted her rent.  Instead, Ms. Murphy learned of the new rent amount when her landlord served an eviction notice demanding that Ms. Murphy pay all rent due in November 2010.  Ms. Murphy paid the balance due within the three days, thereby avoiding eviction.

36)     In late December 2010, Ms. Murphy's employment ended because the business closed.  She immediately called her case manager at the Authority and informed her that she no longer had income.  The Authority did not respond and did not lower her rent despite her reduced income.

37)     To pay her share of rent, Ms. Murphy donated plasma, collected cans, and borrowed money from friends and distant family members.  Each plasma donation weakened and exhausted Ms. Murphy.  After several months of regular donations, she was hospitalized for dehydration in July 2011.

38)     From January to June 2011, on at least five occasions, Ms. Murphy submitted written documents to the Authority stating she was unable to pay rent because she had no income.

39)     In November 2011, Ms. Murphy was diagnosed with an illness and her doctor ordered her to stop donating plasma, which had been her only steady source of income.  As a result, she could no longer pay her share of rent or her utility bill, and her power was shut off.  When Ms. Murphy sought help from Authority employee Helene Starkey, Ms. Starkey did not reduce the rent and instead referred Ms. Murphy to the County Department of Human Services for assistance with her utility bill.

40)     The landlord began charging Ms. Murphy a $60 monthly late fee based on her failure to pay her $30 rent and subsequently issued multiple eviction notices demanding conflicting amounts of rent.

41)     On March 6, 2012, the Authority issued a termination notice of Ms. Murphy's Section 8 Housing Voucher for "commit[ing] serious or repeated violations of the Lease [pursuant to] 24 C.F. R. §982.551(e)" based on the conflicting notices to pay rent and late fees.

42)     In response, Ms. Murphy submitted a letter on March 9, 2012 requesting a hearing.

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

In her letter, she also pled for help and leniency.  She explained that she had repeatedly informed the Authority that she did not have income, and that illness then prevented her from donating plasma to pay the rent.

43)     On April 9, 2012, the Authority held an informal hearing before Hearing Officer Gustavo Olvera.  Ms. Murphy represented herself.  She again explained the concerns raised in her letter.  Since different three-day notices alleged inconsistent amounts of rent owed, Hearing Officer Olvera left the record open and instructed Ms. Murphy to come to an agreement with the landlord on the amount of rent due.

44)     On April 24, 2012, without further hearing, Hearing Officer Olvera issued a decision upholding the Authority's termination of Ms. Murphy's Section 8 rental assistance.  *See* Exhibit 1. Hearing Officer Olvera based his decision on an Authority employee's post-hearing conversation with the landlord wherein the landlord reported that Ms. Murphy did not contact her to resolve the situation.  The landlord's alleged statement is false and does not constitute a lawful reason for termination.

45)     Ms. Murphy was not given an opportunity to confront or cross-examine the landlord or Authority employee before the decision was rendered.

46)     On April 24, 2012, the Authority issued a decision upholding the termination.  The decision did not address the Authority's failure to notify Ms. Murphy of her increased rent or reduce Ms. Murphy's rent after she lost her job.  The decision also did not address the 200% late fee charged by the landlord.

47)     On May 18, 2012, Ms. Murphy's landlord proceeded with an unlawful detainer action.  Ms. Murphy entered into an agreement with her landlord wherein she agreed to move out in exchange for a waiver of any rent owed.  The landlord subsequently dismissed the case.

48)     On June 7, 2012, the Authority issued a Notice of Acknowledgment of Termination which indicated that rental assistance would stop as of June 30, 2012.

49)     On August 24, 2012, Greater Bakersfield Legal Assistance sent the Authority a letter requesting that the Authority reverse the termination and reinstate Ms. Murphy's Section 8

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

assistance.  After an informal meeting between Ms. Murphy's counsel and Deputy Director Patricia Norris, Ms. Murphy's counsel received an e-mail communication from Ms. Norris on November 2, 2012.  The e-mail stated that based on Ms. Norris's own investigation and conversations with Ms. Murphy's landlord, case worker from Department of Human Services, and Hearing Officer Olvera, she would close the matter and Section 8 assistance would not be reinstated.  Ms. Norris did not speak with Ms. Murphy as part of her investigation.

50)     On January 30, 2013, Ms. Murphy's counsel sent HACK a request for all records related to the hearing pursuant to Code of Civil Procedure §1094.6(c).  To date, HACK has not provided the requested documents.

51)     In violation of California Code of Civil Procedure §1094.6(f), Ms. Murphy was not provided any notice of the right to appeal and the time within which judicial review could be sought.

52)     On May 31, 2013, Ms. Murphy's counsel sent HACK a letter requesting again that the termination be reversed.  In its June 7, 2013 response, HACK admitted Ms. Murphy should have been granted a hardship exemption due to her lack of income.  However, when Ms. Murphy's counsel met with Mr. Pelz and Deputy Director Norris, they refused to reinstate assistance.

53)     Since she moved out of the apartment, Ms. Murphy has stayed on a temporary basis at several friends' homes.  She is currently staying with her sister and paying the utility bill in exchange for her housing.  She is not certain how long this living arrangement will last, and fears that she will not be able to obtain shelter when it ends.

## PLAINTIFF JANE DOE

54)     Plaintiff JANE DOE is a 41-year-old mother of three minor children ages 16, 6, and 5, who currently reside with her.

55)     Ms. Doe first received Section 8 rental assistance when she was relocated to Bakersfield for her protection by federal law enforcement.  She testified in court against a man accused of attempted murder and was at risk of retaliation.  The Authority issued Ms. Doe Section 8 rental assistance as part of the relocation program.

56)     Around July 2012, Ms. Doe requested to transfer her Section 8 assistance to another

residence due to a water leak in her apartment.  The Authority approved the transfer and she moved around December 15, 2012 after following all required transfer procedures.

57)     Soon thereafter, Ms. Doe received a telephone call from Deputy Director Patricia Norris stating that her Section 8 rental assistance had been terminated and the notice had been sent to Ms. Doe's former address.  The Authority subsequently mailed the notice to Ms. Doe's new address.

58)     The termination notice dated December 11, 2012 alleged that Ms. Doe allowed four unauthorized individuals to reside in her home.  The notice did not state the basis for the Authority's conclusion that the individuals lived with Ms. Doe or the relevant time period.

59)     Ms. Doe requested an informal hearing.  The hearing was held on January 31, 2013 and conducted by Hearing Officer Gustavo Olvera.  Ms. Doe represented herself.  On information and belief, the Authority did not introduce any evidence establishing the basis for its conclusion that four people lived with Ms. Doe.  Hearing Officer Olvera questioned Ms. Doe as to each individual named in the notice.  Ms. Doe informed Hearing Officer Olvera that one of the named individuals was her cousin who lived in Sacramento, and that this cousin had never resided in Ms. Doe's home. Ms. Doe informed Officer Olvera that the second named individual was her adult daughter and that she moved out of Ms. Doe's apartment around January of 2012 and now lived at another apartment in Bakersfield.  Ms. Doe indicated that she informed the Authority when her daughter moved out and had her removed from the lease.  Ms. Doe then told Officer Olvera that she did not know the third named individual, and that the fourth name on the notice was her own name but with a different middle initial.  Officer Olvera asked Ms. Doe to confirm her date of birth, at which time he stated that someone must have used her name with a different middle initial during an arrest since a different birth date was given on the notes he was referencing during the hearing.

60)      Hearing Officer Olvera did not allow Ms. Doe an opportunity to review any documents or notes to which he was referring regarding the alleged unauthorized occupants.

61)     On February 6, 2013, Hearing Officer Olvera issued a written decision referring to HACK's investigation, documentation of which was never provided to Ms. Doe before or during the hearing.  *See* Exhibit 2.  Hearing Officer Olvera upheld the termination based on Ms. Doe's alleged

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

failure to provide sufficient evidence to establish that the individuals in question lived somewhere other than at her residence. On February 14, 2013, the Authority issued a Notice of Acknowledgment of Termination indicating that rental assistance would stop as of February 28, 2013.

62)   Through her counsel, Ms. Doe requested all hearing-related records from HACK on February 14, 2013. On March 11, 2013, the Authority provided records, but did not include any documents alleging or evidencing that the four individuals lived with Ms. Doe.

63)   On April 8, 2013, through her counsel, Ms. Doe submitted a Public Records Request pursuant to California Public Records Act again requesting records related to the four individuals. On April 22, 2013, the Authority responded in a letter refusing the request on grounds that that any such records are exempt from disclosure.

64)   On May 16, 2013, Ms. Doe's landlord served her with an eviction notice. The notice demanded the full monthly rent of $1,117 for the period of March 1, 2013 to May 31, 2013. Ms. Doe could not afford to pay without Section 8 assistance so the landlord filed an unlawful detainer complaint. Ms. Doe entered into an agreement to vacate the property in exchange for the dismissal of the eviction action and waiver of past due rents, attorney fees, and court costs. Ms. Doe complied with the agreement and the case was dismissed.

65)   On May 31, 2013, Ms. Doe's counsel sent HACK a letter requesting reversal of the termination decision. In its June 7, 2013 response, HACK refused to reverse the termination.

66)   Ms. Doe and her minor children do not have stable housing. Ms. Doe has had to rely on her friends and family and is sharing a room with her three minor children. She is uncertain how long the situation will last, and fears that she will not be able to secure shelter when it does end.

67)   In violation of California Code of Civil Procedure §1094.6(f), Ms. Doe was not provided any notice of the right to appeal and the time within which judicial review may be sought.

### PLAINTIFF PATRICIA AZEVEDO

68)   Plaintiff PATRICIA AZEVEDO is a 65-year-old grandmother with disabilities. She receives $867 per month in Social Security and Supplemental Social Security benefits.

69)     Ms. Azevedo received Section 8 housing assistance from November 2011 until it was terminated in December 2012.  At all relevant times, Ms. Azevedo has lived with her adult daughter and, during some time periods, her two grandchildren, ages 5 and 8 years.

70)     After qualifying for Section 8 rental assistance, Ms. Azevedo entered into a lease for a two-bedroom unit in Bakersfield.  The total monthly rent on the property was $625; Ms. Azevedo's share was $41, and the Authority paid the difference of $584.

71)     Ms. Azevedo paid her monthly rent to the maintenance man when he came to her door to request it.  Her rental agreement did not specify any other way to pay rent or any address for the property owners.

72)     Around February 2012, another tenant in the complex began harassing Ms. Azevedo's daughter, Pamela.  Pamela complained to the maintenance man and property owners.  On May 20, 2012, the tenant violently attacked Ms. Azevedo and her daughter, and they were taken to the hospital.  In June 2012, Ms. Azevedo filed an insurance claim against the apartment complex owner.

73)     Beginning July 2012, after Ms. Azevedo filed the insurance claim, the maintenance worker stopped coming to pick up the rent.  Ms. Azevedo received no communication regarding any change in the manner of accepting rent and knew of no other way to pay.  She attempted to contact the owners by phone and by certified letter to the address where she believed they worked, but received no response.

74)     During the same time period, Ms. Azevedo requested that the Authority inspect the unit due to its poor condition and the landlord's failure to make repairs.

75)     The Authority conducted inspections of the property to determine whether the unit met federal Housing Quality Standards pursuant to 42 U.S.C. §1437f(o)(8) and 24 C.F.R. §982.401. The property failed several inspections, including one in April 2012 and one in May 2012; the owner was ordered to repair a broken heater and air conditioner, a leaky dishwasher and a broken oven.  On May 30, 2012, the Authority sent a notice to the landlord stating that the housing assistance payment contract between the Authority and the landlord would be terminated as of June 26, 2012 due to the

landlord's failure to make repairs.  On June 29, 2012, the Authority conducted a final inspection and confirmed that the landlord did not make repairs.

76)     In July 2012 the Authority issued Ms. Azevedo a transfer voucher allowing her to move to a new unit with Section 8 assistance.  Ms. Azevedo found alternative housing, but by the time her application was approved HACK had initiated termination proceedings.

77)     After the Authority stopped paying its portion of the rent, Ms. Azevedo's landlord served her with a three-day notice to pay rent or quit in October 2012, followed by a complaint for unlawful detainer.  Ms. Azevedo answered the lawsuit raising affirmative defenses that the rent was not owed due to the poor condition of the apartment, and that the eviction action was retaliatory in violation of state law.

78)     Despite its own termination of the housing assistance payment contract, the Authority notified Ms. Azevedo in a letter dated October 23, 2012 that it would terminate Section 8 assistance based on the landlord's allegation that rent was owed.  The notice was based on the landlord serving Ms. Azevedo with a three-day notice to pay rent or quit for July, August, and September, and filing an unlawful detainer complaint.  Ms. Azevedo requested an informal hearing.

79)     On November 20, 2012, the Authority's Hearing Officer Duane Hilton conducted an informal hearing.  Ms. Azevedo's housing authority case worker, Isabella Perez, and another Authority employee attended.  Relying on the three-day notice issued by the landlord, Hearing Officer Hilton began the hearing by asking Ms. Azevedo why she did not pay the rent.  Ms. Azevedo explained that the property failed multiple inspections and the landlord was retaliating against her for filing an insurance claim and had ceased the usual mode of collecting rents without notice.  She stated that a trial on the unlawful detainer was scheduled for November 29, 2012.  Hearing Officer Hilton informed Ms. Azevedo that he would wait to make a decision until the resolution of the trial. He told her that if the landlord obtained an eviction judgment, then her Section 8 would be terminated; however, if the landlord did not obtain an eviction judgment, then her Section 8 assistance would not be affected.

80)     The Authority presented no evidence other than the three-day notice and unlawful

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

detainer summons and complaint at the hearing.  Ms. Azevedo's landlord was not present.

81)     Two days before the trial, Ms. Azevedo reached an agreement in which the landlord agreed to waive all rents and dismiss the case on the condition that Ms. Azevedo move out.  Ms. Azevedo complied with the terms of the agreement, and the unlawful detainer suit was dismissed with prejudice.

82)     On December 5, 2012, Hearing Officer Hilton issued a decision upholding the termination on grounds that Ms. Azevedo had not paid owed rent.  Exhibit 3.  The decision did not reference the fact that the landlord waived all rent, nor did it evidence any consideration of Ms. Azevedo's affirmative defenses based on habitability and retaliation.

83)     On December 13, 2012, the Authority issued a Notice of Acknowledgment of Termination indicating that rental assistance would stop as of December 31, 2012.

84)     On January 8, 2013, Ms. Azevedo, through counsel, requested reconsideration of the termination.  In a letter dated January 30, 2013, the Authority denied her request.

85)     On January 24, 2013, Ms. Azevedo made a request for records pursuant to California Code of Civil Procedure §1094.6(c).  To date, the Authority has not responded.  On May 31, 2013, Ms. Azevedo's counsel sent HACK a letter requesting once more that HACK reverse the termination decision.  In its June 7, 2013 response, HACK refused.

86)     In violation of California Code of Civil Procedure §1094.6(f), Ms. Azevedo was not provided any notice of the right to appeal and the time within which judicial review may be sought.

87)     Ms. Azevedo and daughter are currently paying more than 80% of their $700 monthly income for rent.  They are at imminent risk of eviction because they cannot afford basic living expenses.

### PLAINTIFF ANDREA GONZALES

88)     Plaintiff ANDREA GONZALES is a 46-year-old mother of two children ages 19 and 16 years old.  Ms. Gonzales very recently secured part-time employment with a catering company where she earns approximately $1,130 per month.  Ms. Gonzales also receives $300 per month from CalWORKs and $459 per month in food stamps.

89)     Ms. Gonzales received Section 8 rental assistance beginning July 24, 2009.  At that time, Ms. Gonzales's household included her children and her boyfriend.  Ms. Gonzales was homeless until she received the voucher.  Ms. Gonzales moved into a home in Bakersfield, CA on September 8, 2009.  The Authority set Ms. Gonzales's portion of the rent at $60 for the three-bedroom home.

90)     In early 2010, Ms. Gonzales's boyfriend assaulted her.  In March 2010, Ms. Gonzales filed a Temporary Restraining Order against him and he moved out.  Ms. Gonzales immediately notified her worker at the Authority of the change in family composition.

91)     In May 2010, Ms. Gonzales completed an annual review with HACK and again informed the Authority that her abuser had moved out.  The Authority set Ms. Gonzales's portion of the rent to $0.  Ms. Gonzales continued to live in the home with her two children.

92)     In June 2011, the Authority conducted another annual review, and Ms. Gonzales' rent remained at $0.

93)     Around June 23, 2012, Ms. Gonzales received a notice from the Authority stating that Ms. Gonzales's portion of the rent was being raised from $0 to $307 per month effective August 1, 2012.  The notice did not give any reason for the increase or inform Ms. Gonzales that she had the right to request an informal hearing.  The new amount represented 63% of Ms. Gonzales's income.

94)     Ms. Gonzales immediately called the Authority to find out why her rent had increased, but the Authority gave her no explanation and instead instructed her to contact her landlord to make payment arrangements.

95)     Ms. Gonzales made repeated calls to the Authority asking for an explanation for the increase in rent, to no avail.  She went to the Authority's office on in December, 2012 and asked for reduced rent and a transfer of her voucher.  The Authority refused the request and again did not notify Ms. Gonzales that she had the right to an informal hearing.  Instead, Ms. Gonzales's case worker told her to give the Authority any eviction notices that she received.

96)     On January 9, 2013, Ms. Gonzales's landlord posted a three-day notice to pay rent or quit.  The notice demanded rent for October, November, December, and January.

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

97)     The next day, Ms. Gonzales met with an Authority supervisor, Cristina Provencio, her case manager, Isabel Perez, and two case managers from the Bakersfield Homeless Center.

98)     At that meeting, Ms. Provencio explained to Ms. Gonzales that her former Authority case manager made a mistake in 2010 when she failed to notify Ms. Gonzales that her home was considered "underutilized" after her abuser moved out.  During this meeting, the Authority told Ms. Gonzales there was nothing she could do to remedy the issue.  Ms. Gonzales was not informed that she had the right to an informal hearing regarding the determination and the right to request an exception to the housing size rules.

99)     On January 17, 2013, Ms. Gonzales's landlord served her with an unlawful detainer summons and complaint.  Thinking the owner was willing to negotiate a deal with her, she did not file a response.  The owner did not negotiate a deal and instead obtained a default judgment on January 29, 2013.

100)    On February 8, 2013, HACK issued a Notice of Termination of Section 8 Assistance for "commit[ing] serious or repeated violation of the Lease [pursuant to] 24 C.F.R. §982.551(e)" based on the three-day notice to pay rent or quit and eviction action.  Ms. Gonzales immediately requested an informal hearing.

101)    On March 11, 2013, Ms. Gonzales moved out of her home.

102)    On April 9, 2013, two months after Ms. Gonzales's hearing request, HACK conducted an informal hearing.  The Authority did not present any evidence in support of its decision to terminate Ms. Gonzales's voucher.  Ms. Gonzales's attorney informed the hearing officer, Martha Johnson, that negotiation was pending to resolve the unlawful detainer action.  In response, Ms. Johnson indicated that she would wait to issue a decision pending resolution of the unlawful detainer matter.

103)    On April 26, 2013, the landlord set aside the default judgment and dismissed the entire eviction action, thus waiving all claims for rent.  That same day, before Ms. Gonzales could submit evidence demonstrating that she did not owe any rent, Hearing Officer Martha Johnson issued the final decision to terminate Ms. Gonzales's assistance.  Exhibit 4.  The decision was based

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

on the fact that Ms. Gonzales's landlord had served her with a three-day notice to pay rent.

104)     In violation of California Code of Civil Procedure §1094.6(f), Ms. Gonzales was not provided any notice of the right to appeal and the time within which judicial review may be sought.

105)     The Authority terminated Ms. Gonzales's Section 8 assistance effective March 31, 2013.

106)     On May 31, 2013 Ms. Gonzales's counsel sent HACK a letter requesting that HACK reinstate assistance.  In its June 7, 2013 response HACK refused.

107)     After losing her home, Ms. Gonzales stayed on a temporary basis at several relatives' homes.  At times, there has not been room for the whole family so she and her eldest child had been living apart.

108)     Ms. Gonzales recently secured part-time employment with a catering company where she earns approximately $1,130 per month.  Since securing employment, Ms. Gonzales has been able to rent a small one-bedroom apartment for $525 per month.  Both her children are now living with her in the small apartment.  The apartment lacks full-size appliances, so Ms. Gonzales and her family make do with a hot plate and mini-fridge.  Ms. Gonzales currently spends greater than 40% of her gross monthly income on rent and utilities.

**PLAINTIFF MONICA DAVIS**

109)     Plaintiff MONICA DAVIS is a disabled grandmother who received Section 8 housing assistance until she was displaced from her home due to leaking raw sewage and other dangerous conditions on April 9, 2012.  The Authority terminated her assistance on February 6, 2013.

110)     After qualifying for Section 8 assistance, Ms. Davis entered a lease for a mobile home in October 2011.  Ms. Davis agreed to pay $536 in rent and the Authority agreed to pay $114 for a total rent to the landlord of $650 per month.

111)     When Ms. Davis moved into her home, she was employed as a retail associate at a local store.

112)     In December 2011, less than two months after Ms. Davis moved in, the toilets overflowed and flooded the home.  Ms. Davis notified the landlord and HACK.  She was without

running water for two weeks while repairs were made.

113)   The heater in Ms. Davis's home was inoperable for the entire 2011–2012 winter.  Ms. Davis's hands were so cold that they turned blue.  Ms. Davis repeatedly notified the landlord and her Authority case worker of the defective heater, but received no assistance.

114)   Soon after she moved in, Ms. Davis discovered that her electric meter ran continuously because it was connected to both her mobile home and the landlord's mobile home, which was located next door.  The landlord initially allowed Ms. Davis to make partial rent payments because she was paying for both units' electricity.  The electric bills exceeded $300 each month.  Ms. Davis complained to the Authority and an Authority employee told her to pay her utility bills.  No repairs were made despite Ms. Davis's requests.

115)   Receiving no response from the Authority or the landlord, Ms. Davis found a general contractor to inspect the property and forwarded the resulting report to the Authority.  The Authority finally conducted an inspection on February 23, 2012 to determine whether the home met federal Housing Quality Standards.

116)   The Authority deemed the home substandard due to numerous violations including leaking sinks, electrical problems, faulty plumbing, a defective heater, and a defective hot water heater.  The Authority ordered the landlord to repair the defects by March 24, 2012.

117)   Instead of repairing the property, the landlord removed the sewer cap from a pipe in the yard, leading to a sewage flood outside Ms. Davis's home.

118)   The landlord then served Ms. Davis a three-day notice to pay rent or quit on March 6, 2012.  The notice alleged that Ms. Davis owed $650 for each month beginning November 2011, even though Ms. Davis's portion of the rent was only $536, and even though the landlord had agreed to accept reduced rent due to the faulty electric meter.

119)   On March 14, 2012, the Authority conducted another inspection and again failed the property for continuing severe defects including backed up plumbing and overflowing toilets.  The Authority designated the repairs "urgent" and ordered the landlord to correct the defects within 24 hours.

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

120)    The Authority re-inspected the property on March 30, 2012 and confirmed that the landlord failed to make any of the ordered repairs.  Due to this failure, the Authority sent the landlord a 30-day notice of termination of contract on April 2, 2012.

121)    Ms. Davis notified Kern County Code Compliance about the conditions in her home, and on March 16, 2012 the County inspected the property and identified numerous hazardous conditions including a failed septic system.

122)    On April 5, 2012, despite the outstanding orders from the County and the Authority, the landlord filed an unlawful detainer suit against Ms. Davis based on nonpayment of rent.  However the suit was dismissed one month later for lack of prosecution.

123)    The County re-inspected the property on April 9, 2012 and on that same day issued a notice to the landlord and the Authority stating that the property was being posted "occupancy unsafe" due to numerous violations including sewage flooding the home.  The letter specifically stated that Ms. Davis was being displaced due to the dangerous conditions at the property.

124)    Ms. Davis was forced to miss work every time HACK or the County scheduled an inspection of her home.  When she became homeless it became even more difficult to get to work and she ultimately lost her retail job in May 2012.

125)    Ms. Davis moved out of the property when it was condemned and became homeless.

126)    On May 2, 2012, the Authority approved Ms. Davis's request for a transfer voucher allowing her to seek new housing using her Section 8 assistance.  The Authority then sent Ms. Davis's landlord a "current rent statement for transfer" form.  The landlord completed the form stating that Ms. Davis owed rent.  Despite the County condemning the property and the Authority's own inspection reports designating the property unsafe to occupy, the Authority then rescinded Ms. Davis's transfer voucher until she paid the balance alleged by the landlord.

127)    In July 2012 the Authority sent Ms. Davis a notice requesting that she complete recertification paperwork in order to continue with her Section 8 assistance.  Ms. Davis complied with the request and the Authority approved her for continued Section 8 assistance.

128)    Ms. Davis found a new apartment in August 2012.  The Authority refused to enter

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF

into a contract for the apartment until Ms. Davis paid the balance alleged by her former landlord. Ms. Davis was unable to pay the rent without Section 8 assistance and therefore remained homeless.

129)    On November 2, 2012 the Authority sent Ms. Davis a letter terminating her Section 8 assistance based on the balance alleged by the former landlord.  Ms. Davis requested an informal hearing on November 13, 2012.  The Authority did not hold a hearing until January 31, 2013.

130)    Gustavo Olvera presided over the hearing.  Ms. Davis represented herself.  She told the hearing officer about the hazardous conditions at the property, the County order designating the home unsafe for occupancy, and the defective electrical meter.  She asked the officer if he had copies of all of the inspection reports and code enforcement notices and he responded "yes."  She explained that the landlord agreed to let her pay reduced rent due to the faulty electric meter.  She explained that she had repeatedly asked for assistance from HACK and ultimately had to move out of the property due to unsafe conditions.  The landlord was not present at the hearing.

131)     Apparently relying on the landlord's three day notice to pay rent or quit, the hearing officer found that Ms. Davis committed a serious violation of the lease and upheld the termination of Ms. Davis's assistance by letter dated February 6, 2013.  Exhibit 5.

132)    In violation of California Code of Civil Procedure §1094.6(f), Ms. Davis was not provided any notice of the right to appeal and the time within which judicial review may be sought.

133)    Despite the County's notice of displacement and the Authority's own notice terminating the contract with Ms. Davis's landlord, Authority records show that the Authority continued to pay Ms. Davis's former landlord its portion of the rent through at least September 2012.

134)    Ms. Davis remains homeless.  She stays with friends or family when she is able, but sometimes has to sleep in her car.  She cares for a friend's elderly mother and in exchange is allowed to share meals with the family and use their car.

## INJUNCTIVE AND DECLARATORY RELIEF

135)    Injunctive relief is necessary to prevent defendants from continuing to engage in the unlawful practices alleged herein.  Defendants and persons acting in concert therewith have done, are now doing, and will continue to do or cause to be done, the above-described illegal acts unless

restrained or enjoined by this Court.  Plaintiffs have no plain, speedy, or adequate remedy at law, in that pecuniary compensation alone would not afford adequate and complete relief.  Unless defendants are restrained from committing further illegal acts, their above-described acts will cause great and irreparable damage to plaintiffs.

136)    An actual controversy exists between plaintiffs and defendants concerning their rights, privileges, and obligations in that plaintiffs contend that defendants' above-mentioned actions have violated and will continue to violate their rights under federal and state law and defendants contend in all respects to the contrary.

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. §1983, U.S. Constitution, 14th Amendment,

### By All Plaintiffs Against All Defendants)

137)    Plaintiffs re-allege and incorporate herein each and every allegation contained in the above paragraphs.

138)    Contrary to 42 U.S.C. §1983, defendants, acting under color of state law, have violated plaintiffs' rights by failing to provide due process as required under the Fourteenth Amendment to the United States Constitution, the U.S. Housing Act and its implementing regulations.

139)    Defendants violated plaintiffs' right to due process by 1) failing to give notice of the reasons for their actions; 2) terminating assistance based on hearsay evidence; 3) failing to grant an opportunity to confront and cross-examine evidence and witnesses; 4) making termination decisions unsupported by evidence; 5) improperly placing the burden of proof on assisted tenants 6) failing to issue written decisions stating the factual and legal basis for the decision.

140)    As a result of defendants' actions, plaintiffs are entitled to injunctive and declaratory relief as defendants' conduct is ongoing.

**SECOND CLAIM FOR RELIEF**

**(California Constitution, Article 1, §7(a),**

**By All Plaintiffs Against All Defendants)**

141)     Plaintiffs re-allege and incorporate herein each and every allegation contained in the above paragraphs.

142)     Defendants have violated Article 1, section 7(a) of the California Constitution by terminating plaintiffs' Section 8 vouchers without providing due process of law.

143)     As a result of defendants' actions, plaintiffs are entitled to injunctive and declaratory relief as defendants' conduct is ongoing.

**THIRD CLAIM FOR RELIEF**

**(42 U.S.C. §1983, U.S. Constitution, 14th Amendment, By Plaintiffs Brittney Murphy and**

**Andrea Gonzales Against All Defendants)**

144)     Plaintiffs re-allege and incorporate herein each and every allegation contained in the above paragraphs.

145)     Contrary to 42 U.S.C. §1983, defendants, acting under color of state law, have violated plaintiffs' rights by failing to provide due process as required under the Fourteenth Amendment to the United States Constitution, the U.S. Housing Act and its implementing regulations.

146)     Defendants violated Ms. Murphy's right to due process by failing to provide her notice or opportunity for hearing regarding her increased rent share.  Defendants further violated Ms. Murphy's right to due process by failing to provide her notice or opportunity for hearing regarding her right to reduced rent share after her loss of income.

147)     Defendants violated Ms. Gonzales's right to due process by failing to provide her notice or opportunity for hearing regarding the determination that her unit was too large for her family size and failing to notify her of her right to request an exception to the unit size standards.

148)     As a result of defendants' actions, plaintiffs are entitled to injunctive and declaratory relief as defendants' conduct is ongoing.

**FOURTH CLAIM FOR RELIEF**

**(42 U.S.C. §1983, 42 U.S.C. §1437f; 24 C.F.R. §982.552 to 982.555,**

**By All Plaintiffs Against All Defendants)**

149)    Plaintiffs re-allege and incorporate herein each and every allegation contained in the above paragraphs.

150)    Contrary to 42 U.S.C. §1983, defendants, acting under color of state law, have violated plaintiffs' rights by failing to follow the policies and procedures of the U.S. Housing Act and its implementing federal regulations by improperly terminating plaintiffs' Section 8 rental assistance as outlined above.

151)    As a result of defendants' actions, plaintiffs are entitled to injunctive and declaratory relief as defendants' conduct is ongoing.

**FIFTH CLAIM FOR RELIEF**

**(42 U.S.C. §1983, 42 U.S.C. §1437f(o)(2)(A),**

**by Plaintiff Brittney Murphy Against All Defendants)**

152)    Plaintiff re-alleges and incorporates herein each and every allegation contained in the above paragraphs.

153)    Contrary to 42 U.S.C. §1983, defendants, acting under color of state law, have violated plaintiff's rights by failing to comply with 42 U.S.C. §1437f(o)(2)(A) by setting her rent at an amount that exceeded 30% of her income.

154)    As a result of defendant's actions, plaintiff is entitled to injunctive and declaratory relief as defendants' conduct is ongoing.

**SIXTH CLAIM FOR RELIEF**

**(Writ of Mandate Pursuant to California Code of Civil Procedure §1094.5,**

**By Plaintiff Brittney Murphy Against All Defendants)**

155)    Plaintiff re-alleges and incorporates herein each and every allegation contained in the above paragraphs.

156)    Defendants' decision to terminate Ms. Murphy's Section 8 rental assistance is a

prejudicial abuse of discretion and a failure to provide a fair hearing under California Code of Civil Procedure §1094.5 for the reasons stated above.

157)    Ms. Murphy has exhausted all administrative remedies.

### SEVENTH CLAIM FOR RELIEF

**(Writ of Mandate Pursuant to California Code of Civil Procedure §1094.5,**

**By Plaintiff Jane Doe Against All Defendants)**

158)    Plaintiff re-alleges and incorporates herein each and every allegation contained in the above paragraphs.

159)    Defendants' decision to terminate Ms. Doe's Section 8 rental assistance is a prejudicial abuse of discretion and a failure to provide a fair hearing under California Code of Civil Procedure §1094.5 for the reasons stated above.

160)    Ms. Doe has exhausted all administrative remedies.

### EIGHTH CLAIM FOR RELIEF

**(Writ of Mandate Pursuant to California Code of Civil Procedure §1094.5,**

**By Patricia Azevedo Against All Defendants)**

161)    Plaintiff re-alleges and incorporates herein each and every allegation contained in the above paragraphs.

162)    Defendants' decision to terminate Ms. Azevedo's Section 8 rental assistance is a prejudicial abuse of discretion and a failure to provide a fair hearing under California Code of Civil Procedure §1094.5 for the reasons stated above.

163)    Ms. Azevedo has exhausted all administrative remedies.

### NINTH CLAIM FOR RELIEF

**(Writ of Mandate Pursuant to California Code of Civil Procedure §1094.5,**

**By Andrea Gonzales Against All Defendants)**

164)    Plaintiff re-alleges and incorporates herein each and every allegation contained in the above paragraphs.

165)    Defendants' decision to terminate Ms. Gonzales's Section 8 rental assistance is a

prejudicial abuse of discretion and a failure to provide a fair hearing under California Code of Civil Procedure §1094.5 for the reasons stated above.

166)   Ms. Gonzales has exhausted all administrative remedies.

## TENTH CLAIM FOR RELIEF

### (Writ of Mandate Pursuant to California Code of Civil Procedure §1094.5,

### By Monica Davis Against All Defendants)

167)   Plaintiff re-alleges and incorporates herein each and every allegation contained in the above paragraphs.

168)   Defendants' decision to terminate Ms. Davis's Section 8 rental assistance is a prejudicial abuse of discretion and a failure to provide a fair hearing under California Code of Civil Procedure §1094.5 for the reasons stated above.

169)   Ms. Davis has exhausted all administrative remedies.

## ELEVENTH CLAIM FOR RELIEF

### (Writ of Mandate Pursuant to California Code of Civil Procedure §1085,

### By All Plaintiffs Against All Defendants)

170)   Plaintiffs re-allege and incorporate herein each and every allegation contained in the above paragraphs.

171)   HACK has a ministerial duty to administer the Section 8 rental assistance program in a manner which conforms to due process of law, federal regulations and its own policies.

172)   At all times relevant, HACK has had the ability to administer the Section 8 rental assistance program in accordance with legal requirements but has failed to do so.

173)   Plaintiffs have exhausted their administrative remedies, and there is no further remedy at law to compel defendants to comply with legal requirements described above.

174)   Plaintiffs have no other plain, speedy, or adequate remedy at law.

175)   Plaintiffs are beneficially interested in the performance of defendants' duty; therefore, plaintiffs seek a writ of mandate to compel defendants to comply with the requirements of the law.

**TWELVTH CLAIM FOR RELIEF**

**(Violation of Code of Civil Procedure §1094.6(c)—Failure to Provide Records,**

**By Brittney Murphy and Patricia Azevedo Against All Defendants)**

176)   Plaintiffs re-allege and incorporate herein each and every allegation contained in the above paragraphs.

177)   Plaintiffs Brittney Murphy and Patricia Azevedo, by their counsel, submitted written requests for records from HACK pursuant to Code of Civil Procedure §1094.6(c).  HACK has responded to neither of the requests although more than 190 days have passed.

178)   HACK's refusal has put plaintiffs at a disadvantage in presenting their arguments before the court.

179)   Defendants' conduct entitles plaintiffs to injunctive and declaratory relief pursuant to California Government Code §6258.

180)   Plaintiffs are entitled to injunctive and declaratory relief because defendants' conduct is ongoing.

**THIRTEENTH CLAIM FOR RELIEF**

**(Violation of Public Records Act, California Government Code §6253,**

**By Jane Doe Against All Defendants)**

181)   Plaintiff re-alleges and incorporates herein each and every allegation contained in the above paragraphs.

182)   California Government Code §6253 states in pertinent part:  "Each agency, upon a request for a copy of records, shall, within 10 days from receipt of the request, determine whether the request, in whole or in part, seeks copies of disclosable public records in the possession of the agency and shall promptly notify the person making the request of the determination and the reasons therefore…  When the agency dispatches the determination, and the agency determines that the request seeks disclosable public records, the agency shall sate the estimated date and time when the records will be made available."

183)   Ms. Doe submitted a Public Records Act request pursuant to Government Code

§6250 *et seq.* through her counsel on April 8, 2013.  Defendants refused to disclose the documents requested, improperly raising the exemption clause pursuant to Govern Code §6254(f).

184)     Defendants' refusal has put Ms. Doe at a disadvantage in presenting her arguments before the court.

185)     Defendants' conduct entitles plaintiff to injunctive and declaratory relief pursuant to California Government Code §6258.

186)     Plaintiff is entitled to injunctive and declaratory relief because defendants' conduct is ongoing.

**WHEREFORE, Plaintiffs request that this Court:**

187)     Assume jurisdiction for this case;

188)     Grant injunctive relief directing defendants to issue each plaintiff Section 8 rental assistance forthwith;

189)     Enjoin defendants from terminating Section 8 rental assistance without providing fair hearings that comport with Due Process of Law which at minimum, requires that:

    a)     Participants receive notices clearly stating the basis for the termination and explaining the right to informal hearing and the deadline for requesting a hearing;

    b)     Participants are provided an opportunity to examine the evidence which forms the basis for the termination before the hearing,

    c)     Participants are provided an opportunity to contest the evidence against them and confront witnesses against them;

    d)     The burden of proof lies on the Authority to prove the basis for the termination on a preponderance of the evidence standard;

    e)     The reviewer does not base his or her decision on hearsay evidence;

    f)     Participants are provided a statement of the reasons for the decision to terminate the assistance, based on evidence presented only at and during the hearing.

g)   Participants receive notice of their right to appeal and the time in which to do so.

190)   Enjoin defendants from administering the Section 8 program in a manner that violates Due Process of Law by failing to give notices of reasons for Authority actions;

191)   Declare that defendants have violated the Due Process Clause of the United States Constitution by terminating plaintiffs' Section 8 rental assistance without fair hearing;

192)   Declare that defendants have violated the Due Process Clause of the California Constitution by terminating plaintiffs' Section 8 rental assistance without fair hearing;

193)   Declare that defendants have violated the U.S. Housing Act and its amendments and implementing regulations;

194)   Declare that defendants have violated the Public Records Act §6253;

195)   Issue a Preemptory Writ of Mandate ordering defendants to conform their policies and procedures to the requirements of the federal regulations and due process of law;

196)   Award plaintiffs reasonable attorneys' fees and costs as allowed by the law; and

197)   Award such other and further relief that the Court may deem just, fitting, and proper.


Dated: May 20, 2014                         Respectfully Submitted,

                                            GREATER BAKERSFIELD LEGAL
                                            ASSISTANCE, INC.;
                                            WESTERN CENTER ON LAW AND POVERTY;
                                            SIDLEY AUSTIN LLP


                                            By: _/s/ Janie H. Chang_____
                                                Janie H. Chang
                                                Attorneys for Plaintiffs

COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MANDAMUS RELIEF